IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| **WANRONG LIN,** *et al.*, | * | |
| Plaintiff-Petitioners, | * | |
| v. | | Case No.: GJH-18-3548 |
| | * | |
| **KIRSTJEN NIELSEN,** *et al.*, | | |
| | * | |
| Defendant-Respondents. | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Undocumented spouses of U.S. citizens who entered the United States without inspection or who have been ordered removed from the United States are eligible to apply for lawful status that will permit them to reside permanently in the United States, but only after leaving the United States to complete a procedure called consular processing. This process often results in long periods of separation, and many spouses have thus chosen not to apply for lawful status. In 2016, in recognition of this problem, United States Customs and Immigration Services ("USCIS") promulgated a rule that allowed spouses with final orders of removal to apply for a waiver of inadmissibility prior to leaving the United States to begin the consular processing procedure.

Plaintiff-Petitioner Wanrong Lin and his American-citizen wife, Plaintiff-Petitioner Hui Fang Dong (collectively, "Petitioners") applied for this waiver and, on August 29, 2018, arrived at a USCIS office for a mandatory interview to confirm that their relationship was bona fide. After the interview concluded, Lin was escorted into a separate room where he was arrested by Immigration and Customs Enforcement ("ICE") officers. Petitioners filed a complaint and petition for habeas corpus, alleging that his arrest, detention, and removal are in violation of the

Immigration and Nationality Act, the Due Process Clause, and the Administrative Procedure Act. ECF No. 1. Petitioners subsequently filed a Motion for a Preliminary Injunction. ECF No. 15. A motions hearing was held on March 15, 2019. ECF No. 22. For the following reasons, the Motion for a Preliminary Injunction is granted.

## I.     BACKGROUND

### A. Legal Background

An alien "who has been ordered removed" is inadmissible for re-entry to the United States for five, ten, or twenty years from the date of departure or removal, depending on whether the alien is removed upon arrival, is removed after arrival, has already been removed once before, or has been convicted of an aggravated felony.[1] 8 U.S.C. § 1182(a)(9)(A)(i-ii); 8 C.F.R. 212.2(a). An alien who remains "inadmissible" is ineligible to receive a visa to be admitted to the United States as a lawful permanent resident. 8 U.S.C. § 1182(a). This inadmissibility may be waived by the Secretary of Homeland Security's consent to reapply for admission, 8 U.S.C. § 1182(a)(9)(A)(iii), but the waiver application process can take well over a year, 78 Fed. Reg. 536-01, 536 (Jan. 3, 2013). Prior to 2013, an alien who wanted to seek lawful permanent resident status and apply for this waiver of admissibility was required to first depart from the United States. *Id*.

In 2013, recognizing that undocumented immediate family members of citizens who were living in the United States were choosing to forego applying for visas rather than be separated from their families for at least a year, and potentially longer, the Department of Homeland Security ("DHS") promulgated a rule "to allow certain immediate relatives of U.S. Citizens who

---

[1] The Court recognizes that "many consider 'using the term 'alien' to refer to other human beings' to be 'offensive and demeaning.' [The Court uses] the term 'only where necessary to be consistent with the statutory language' that Congress has chosen and 'to avoid any confusion in replacing a legal term of art with a more appropriate term.'" *See Trump v. Hawaii*, 138 S.Ct. 2392, 2443 n.7 (2018) (Sotomayor, J., dissenting) (quoting *Flores v. United States Citizenship & Immigration Servs.*, 718 F.3d 548, 551-52 n. 1 (6th Cir. 2013)).

are physically present in the United States to request provisional unlawful presence waivers prior to departing from the United States for consular processing of their immigrant visa applications." *Id.* ("[M]any immediate relatives who may qualify for an immigrant visa are reluctant to proceed abroad to seek an immigrant visa."). The rule was expressly promulgated to "significantly reduce the time that U.S. citizens are separated from their immediate relatives," *id.*, and to "encourage immediate relatives who are unlawfully present to initiate actions to obtain an immigrant visa to become [lawful permanent residents]," *id.* at 567. In 2016, DHS promulgated another rule extending eligibility for these provisional unlawful presence waivers to aliens with final removal orders. 81 Fed. Reg. 50244.

The process requires first filling out a Form I-130, which establishes a qualifying relationship to a U.S. citizen. 78 Fed. Reg. 536-01 at 547-48. After the Form I-130 is approved, the individual must file a Form I-212, which requests a waiver of inadmissibility and, pursuant to 8 C.F.R. § 212.2(j), can be conditionally approved while the individual remains in the United States. 78 Fed. Reg. 536-01 at 547-48. Once the I-212 is conditionally approved, the individual must complete Form I-601A, an application for a provisional unlawful presence waiver. *Id.*; *see also* 8 C.F.R. § 212.7(e)(4)(iv). Once the waiver is approved, the individual departs from the United States to obtain the immigrant visa, executing the prior removal order. *See* 8 U.S.C. § 1101(g).

B. <u>Factual Background</u>

Petitioner Dong became a naturalized U.S. Citizen on February 24, 2004. ECF No. 1 ¶ 29. Petitioners have been married since May 2004. *Id.* ¶ 28. Petitioner Lin is a citizen of the People's Republic of China and has had a removal order from the United States since his request for asylum was denied on March 10, 2008. *Id.* ¶¶ 28-29. The Board of Immigration Appeals ("BIA") affirmed the denial in November 2009, and later denied a motion to reopen. *Id.* ¶ 29; *Lin*

*v. Holder*, 771 F.3d 177, 181 (4th Cir. 2014). The Fourth Circuit denied a petition for review in 2011. *Lin v. Holder*, 452 F. App'x 369 (4th Cir. 2011). Lin filed another motion to reopen in December 2012, which was also denied by the BIA, and the Fourth Circuit once more denied a petition for review. *Lin*, 771 F.3d 177.

In 2016, Petitioners began the provisional waiver application process by completing a Form I-130. *Id*. ¶ 31. As part of this process, USCIS scheduled Petitioners for a mandatory interview on August 29, 2018 to determine that they were in a bona fide relationship. *Id*. Though the USCIS interviewer approved the petition, ICE agents arrested Mr. Lin at the conclusion of the interview and transported him to Anne Arundel County Detention Center to be held for deportation. *Id*. On November 19, 2018 at 9:35 AM EST, Petitioners filed this complaint and petition for habeas corpus, as well as a motion for a temporary restraining order staying Lin's deportation. A flight carrying Mr. Lin departed from Newark, NJ for Shanghai, China at 9:54 AM that same day. A hearing was held at 3:00 PM that afternoon. ECF No. 4. That evening, before Lin's flight arrived in Shanghai, the Court granted the motion for a temporary restraining order and ordered ICE to return Lin to the United States. ECF No. 6. Lin was returned to the United States on December 13, 2018. ECF No. 11. The pending Motion for Preliminary Injunction was filed on December 19, 2018. ECF No. 15.

**II.    DISCUSSION**

Defendants contest both the Court's jurisdiction to hear Petitioners' challenge and the merits of the motion for a preliminary injunction.

A.    Jurisdiction

First, Defendants contend that 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), and 1252(g) each deprive the Court of jurisdiction to enjoin the execution of Lin's removal order. A federal court must have subject-matter jurisdiction to decide a matter before it. *Lightfoot v. Cendant Mortg.*

*Corp.*, 137 S.Ct. 553, 562 (2017). If it does not, then the court must dismiss the case. Fed. R. Civ. P. 12(b)(1). Federal courts "only have the power that is authorized by Article III of the Constitution and the statutes enacted by Congress." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986); *see also Sheldon v. Sill*, 49 U.S. 441, 449 (1850) ("And it would seem to follow, also, that, having a right to prescribe, Congress may withhold from any court of its creation jurisdiction of any of the enumerated controversies."). But when interpreting a statute that a party asserts limits judicial review, courts must "begin with the strong presumption that Congress intends judicial review of administrative action." *Berkley v. Mountain Valley Pipeline*, 896 F.3d 624, 631 (4th Cir. 2018) (quoting *Bowen v. Mich. Acad. Of Family Physicians*, 476 U.S. 667, 670 (1986)). This presumption can be overcome "only upon a showing of 'clear and convincing evidence' of a contrary legislative intent." *Abbott Labs. v. Gardner*, 387 U.S. 136, 141 (1967). Clear and convincing evidence of contrary intent can be established by "specific language, specific legislative history, and inferences of intent drawn from the statutory scheme as a whole that Congress intended to bar review." *Cuozzo Speed Techs., LLC v. Lee*, 136 S.Ct. 2131, 2140 (2016) (quotations omitted).

Section 1252(a)(5) states that "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter." Section 1252(b)(9) goes on to further state that:

> [j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.

Defendants argue that these provisions, together, bar judicial review of any claim having any relationship to Lin's removal. Specifically, Defendants contend that Plaintiffs' claims "arise"

from his removal. But, as the Supreme Court has made clear, such an "expansive interpretation of § 1252(b)(9) would lead to staggering results." *Jennings v. Rodriguez*, 138 S.Ct. 830, 840 (2018) ("In past cases, when confronted with capacious phrases like 'arising from,' we have eschewed 'uncritical literalism' leading to results that 'no sensible person could have intended.'").

Petitioners do not "seek judicial review of [Lin's] order of removal." Indeed, the provisional waiver process they seek to complete requires Lin to leave the country to execute his final order of removal. *See Martinez v. Nielsen*, 341 F. Supp. 3d 400, 408 (D.N.J. 2018). Nor do Petitioners' claims arise from an action taken to remove an alien from the United States; these claims could not be raised pursuant to § 1252(b)(9) in immigration court or the BIA, as the relief sought can only be secured after such a court has issued an order of removal. *See Jimenez v. Nielsen*, 334 F. Supp. 3d 370, 381-82 (D. Mass. 2018). Rather than challenging the validity of the order of removal or of any action leading to the removal, Petitioners' APA and INA claims arise from an allegation that DHS has adopted a new policy that nullifies its own rules. Petitioners' Due Process Clause claims arise from an allegation that Petitioners have a legitimate entitlement to complete the application process, and DHS has arbitrarily denied them the opportunity to complete that process. *See Martinez*, 341 F. Supp. 3d at 408 (§§ 1252(a)(5) and (b)(9) do not bar review of the right to engage in the provisional waiver process before removal); *Jimenez*, 334 F. Supp. 3d at 382 (same); *Calderon v. Sessions*, 330 F. Supp. 3d 944, 955 (S.D.N.Y. 2018) (same); *cf. You v. Nielsen*, 321 F. Supp. 3d 451, 458-59 (S.D.N.Y. 2018) (holding that the "arising under" language of § 1252(b)(9) should not be read to "preclude habeas review over challenges to detention that are independent of challenges to removal orders") (citing H.R. Conf. Rep. 109-72, 175 (2005)).

Similarly, § 1252(g) also does not bar review of Petitioners' claims. That section provides that, except for where otherwise provided therein, "no court shall have jurisdiction to

hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). Because the statute's bar on judicial review is limited to a "decision or action by the Attorney General," it has consistently been held to prohibit review of ICE's prosecutorial discretion to commence proceedings, adjudicate cases, or execute removal orders, but not consideration of purely legal questions that do not challenge the Attorney General's discretionary authority. *See Reno v. Am. Arab Anti-Discrimination Comm.*, 525 U.S. 471, 485 n. 9 (1999) ("Section 1252(g) was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion."); *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004) ("The district court may consider a purely legal question that does not challenge the Attorney General's discretionary authority, even if the answer to that legal question—a description of the relevant law—forms the backdrop against which the Attorney General later will exercise discretionary authority."); *Martinez*, 341 F. Supp. 3d at 406 (§ 1252(g) does not bar review of the right to complete a provisional waiver application before removal); *Calderon*, 330 F. Supp. 3d at 654 (same); *You*, 321 F. Supp. 3d at 456-58 (finding that whether "Respondents actions were legal is not a question of discretion, and, therefore, falls outside the ambit of § 1252(g)).

Still, other courts have found that § 1252(g) bars review of the right to complete a provisional waiver application prior to removal. For example, in *Jimenez*, the court held that the plain language of § 1252 does not limit itself to discretionary decisions. 334 F. Supp. 3d at 383-84; *see also Silva v. United States*, 866 F.3d 938, 940 (8th Cir. 2017) (holding that § 1252(g) prohibited an action seeking compensatory damages for an alien's removal to Mexico in violation of a stay pursuant to a timely appeal to the BIA).

The Court finds the *Hovsepian*, *Martinez*, *Calderon*, and *You* courts to have the more persuasive reading of § 1252(g). The Supreme Court's guidance in *Jennings* makes it clear that only the decision or action to execute a removal order is unreviewable—not "any claim that can technically be said to 'arise from' the execution of the removal order." 138 S.Ct. at 841. To conclude otherwise would lead to the same "staggering results" that "no sensible person could have intended" warned of by the *Jennings* Court. *Id*. Petitioners do not challenge whether or how the Attorney General may decide to remove Lin; they concede that his removal is inevitable. They ask only for the opportunity to complete the provisional waiver process provided for in DHS's own regulations. Therefore, the Court concludes that it has jurisdiction to determine the merits of the case.

B. Preliminary Injunction

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Dewhurst v. Cnty' Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011) (quoting *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 22 (2008)) (internal quotation marks omitted). To succeed on a motion for a preliminary injunction, plaintiffs must establish (1) a likelihood of success on the merits, (2) that they are likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in their favor, and (4) that an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). All four factors weigh in favor of granting a preliminary injunction here.

Plaintiffs have shown they are likely to succeed on the merits of their APA claim. The APA bars agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. 706(2)(A). An agency action is arbitrary and capricious when the agency disregards rules or regulations still in effect or departs from a prior policy without

"articulat[ing] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *See Sierra Club v. Dep't of the Interior*, 899 F.3d 260, 293 (4th Cir. 2018). "[A]n agency changing its course must supply a reasoned analysis," and the court may not infer the agency's reasoning from mere silence. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 57 (1983). In short, an agency may not "depart from a prior policy *sub silentio* or simply disregard rules that are still on the books." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

Defendants effectively used the I-130 interview to lure Lin to his arrest, preventing him from completing the provisional waiver process. Defendants have thus taken a rule that was promulgated for one purpose and used it for the opposite purpose. As the *Calderon* and *Martinez* courts also concluded, this is precisely the kind of arbitrary and capricious behavior the APA is designed to prevent. 330 F. Supp. 3d at 958; 341 F. Supp. 3d at 410. Defendants have not, and cannot, reconcile the purpose of the DHS rule and an apparent policy of arresting and deporting applicants who arrive for their I-130 interviews. "If left unchecked, this 'new policy' would render the provisional waiver a nullity." *Martinez*, 341 F. Supp. 3d at 410.

Defendants contend that the arrest and deportation of Lin do not violate the regulations because he has not completed the Form I-212 application for consent to reapply for admission, and thus is ineligible for a provisional unlawful presence waiver. In promulgating the rule, DHS expressly decided that applicants are ineligible to fill out the I-212 until after the I-130 was approved, and ineligible to complete the I-601A until after the I-212 was approved. 78 Fed. Reg. 536-01 at 547-48. It was DHS's arrest and attempted removal of Lin immediately after his interview related to Form I-130 that prevented him from completing the second step of the process, Form I-212. To allow removal under these circumstances would permit the government to erect an impenetrable barrier to completion of the provisional waiver process and, indeed, to

use it as a trap for unsuspecting applicants. Therefore, the Court holds that Plaintiff is likely to succeed on his claim that the arrest and attempt to remove him at the conclusion of his interview violated the Administrative Procedure Act.[2]

As to the second prong of the preliminary injunction analysis, the Court finds Petitioners would both suffer irreparable harm in the absence of a preliminary injunction. Mr. Lin would be asked to fend for himself in a country he has not lived in since 2002. He has no family in Shanghai, and it is unclear how he will care for himself. He would be indefinitely separated from his wife and his three adolescent children. His wife would suffer both the emotional harm of being separated from her husband and raising their children alone, as well as the economic harm from losing her partner in their family-owned restaurant.

As to the third prong, the balance of the equities also tips in favor of Petitioners. They have followed DHS's own promulgated rules. Defendants suggest that Petitioners have not been diligent in their pursuit of an immigrant visa. Not so. DHS recognized, in promulgating the very rule at issue here, that the choice not to pursue an immigrant visa and the accompanying years of family separation is a reasonable choice in light of the circumstances. That Petitioners have not filed a Form I-212 during the pendency of this litigation while Lin's residence has remained uncertain, especially given their experience at the Form I-130 interview stage, says nothing about Petitioners' diligence.

Finally, this order is in the public interest, as it requires DHS to comport with its own rules and regulations, and bars arbitrary and capricious agency action towards vulnerable undocumented immigrants.

---

[2] Because the Court resolves the APA claims in favor of Lin, it need not determine at this stage whether the INA regulations create an entitlement under the Due Process Clause.

### III. CONCLUSION

Petitioners' Motion for a preliminary injunction, ECF No. 15, is granted. Defendants shall be preliminarily enjoined from removing Mr. Lin from the United States pending further proceedings. A separate order shall issue.

Dated: May 2, 2019                    /s/
                                      GEORGE J. HAZEL
                                      United States District Judge